**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KEVIN A. STAGL,

        Plaintiff,

vs.                                                      Case No. 3:07-cv-967-J-32TEM

NICK GROMICKO, etc., et al.,

        Defendants.

## **ORDER**[1]

Plaintiff Kevin A. Stagl filed a complaint in state court on September 10, 2007, bringing claims against Nick Gromicko and the National Association of Certified Home Inspectors (NACHI) under Florida's Electronic Communications Act (Fla. Stat. 668.603(1)), two Florida statutes dealing with deceptive and unfair trade practices (501.203(3)(c) and 501.204(1)), and the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act) (15 U.S.C. §§ 7701 et seq.), as well as a claim for gross negligence. (Doc. 2.) Defendant Nick Gromicko was the sole director of NACHI, and Plaintiff Stagl was a member of NACHI. After one year of membership, Stagl ended his association with NACHI, and he requested that the defendants remove his name from NACHI's email list. Stagl alleges that his name was not removed and he kept receiving emails from NACHI as well as from companies to which NACHI had sold an email list containing his email address. The case was removed to this Court (Doc. 1), and, after the

---

[1]Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

parties demonstrated difficulty in negotiating the litigation process without significant Court supervision (see, e.g. Doc. 18, 19, 20, 21, and 23),[2] the Court directed the parties to file dispositive briefs. (Doc. 23.) This Order directed Plaintiff Stagl to file a motion for summary judgment in which he was to explain what law or laws supported the relief he was seeking, as well as a specific request for relief. Stagl was also directed to include affidavits or other evidentiary support with his motions. In addition, the Order directed the Clerk to enter default as to NACHI and directed Stagl to move for default judgment against NACHI. (Doc. 23.) On October 14, 2008, Stagl filed a Motion for Summary Judgment Against Nick Gromicko (Doc. 25.) On November 4, 2008, Defendant Nick Gromicko filed an Affidavit and Response to Plaintiff's Motion for Summary Judgment. (Doc. 26.) On November 18, 2008, Stagl filed a Motion for Leave to Amend Plaintiff's Motion for Summary Judgment to include supporting exhibits. (Doc. 27.) On November 21, 2008, Stagl filed a Motion for default judgment against NACHI. (Doc. 28.) On December 1, 2008, Gromicko filed a Response in opposition to Stagl's motion for leave to amend motion for summary judgment. (Doc. 29.) Upon review, Stagl's Motion for Leave to Amend Plaintiff's Motion for Summary Judgment (Doc. 27) is **granted**.

I. Motion as to Gromicko

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must

---

[2]All parties are proceeding pro se, defendants' counsel having been permitted to withdraw on November 16, 2007. (Doc. 9.)

2

present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005). Because all parties are proceeding pro se, the Court has liberally construed all their papers, giving them the benefit of the doubt at every turn. See Kroger v. Florida, 130 Fed. Appx. 327, 332 (11th Cir. 2005) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)), cert. denied, 546 U.S. 1151 (2006).

In his Motion for Summary Judgment, as supplemented by his Motion for Leave to Amend Plaintiff's Motion for Summary Judgment (together, the Supplemented Motion for Summary Judgment), Stagl alleges that he is an "Internet Access Service" (Doc. 25 ¶ 1), that he has made "not less than fifteen (15) separate attempts in 2006 trying to motivate Defendants to delete Plaintiff's email address kevin@stagl.com from Defendants' internal email database list" (Doc. 25 ¶ 4), and that "350 spam emails [have been] sent [by Defendants] to kevin@stagl.com since mid-2006 and that short list does not include the hundreds and hundreds of like-kind spam e-mails that were sent throughout 2005 and the first half of 2006." (Doc. 27 ¶ 61.) Plaintiff seeks damages and all other relief available pursuant to the CAN-SPAM Act. By not raising in his Supplemented Motion for Summary

Judgment the claim based on Florida's Electronic Mail Communications Act, nor his claim based on gross negligence, Stagl has apparently abandoned these claims as to Gromicko.[3]

Having reviewed the entire file, the Court has concerns about Stagl's standing to bring a claim under the CAN-SPAM Act, which allows a private cause of action limited to "a provider of Internet access service adversely affected by a violation of section 5(a)(1), 5(b), or (5(d) [15 U.S.C. § 7704(a)(1), 7704(b) or 7704(d)], or a pattern or practice that violates paragraph (2), (3), (4), or (5) of section 5(a) [15 U.S.C. § 7704(a)]." 15 U.S.C. § 7706(g)(1). The statutory language therefore requires that, to have standing, a plaintiff must be an Internet access service that suffers an "adverse effect." See, e.g., Gordon v. Virtumundo, No. 06-0204-JCC, 2007 WL 1459395, at *2-*9 (W.D. Wash. May 15, 2007). Within the meaning of the CAN-SPAM Act, an Internet access service "means a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as part of a package of services offered to consumers. Such term does not include telecommunications services." 47 U.S.C. § 231(e)(4). In Plaintiff's Motion for Summary Judgment, Stagl alleges that he "performs his work under license full time providing

---

[3]Stagl did state in his Supplemented Motion for Summary Judgment that he was seeking damages under the "Unfair and Deceptive Trade Practices Act"–presumably the Florida Deceptive and Unfair Trade Practices Act–but he failed to explain how this law supports the relief he is seeking, nor did he allege actual damages. See Rebman v. Follett Higher Educ. Group Inc., 248 F.R.D. 624, 631 (M.D. Fla. 2008) ("[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006))). Stagl has failed to adequately plead this claim; moreover, as discussed below, the other counts in the Verified Complaint (Doc. 2) are not adequately pled, and therefore the determination that these claims would not apply to NACHI also applies to Gromicko.

4

information online to multiples of customers providing access to internet websites, emails, video and database catalogs, online shopping and credit card transactions." (Doc. 25 ¶ 1). Stagl has not, however, provided any evidentiary support to this effect, and, other than this single allegation, none of Stagl's other filings even suggest that he provides such a service. Indeed, all of his allegations relate to defendants' bombardment of Stagl's own personal email account.

In addition to failing to support his claim that he is an Internet access service, Stagl has not shown that he has been adversely affected within the meaning of the CAN-SPAM Act. See, e.g., Gordon, 2007 WL 1459395, at *8 (noting that plaintiffs cannot show "adverse effect" because they "have suffered no harm related to bandwidth, hardware, Internet connectivity, network integrity, overhead costs, fees, staffing, or equipment costs, and they have alleged absolutely no financial hardship or expense due to e-mails they received from Defendants"). In other words, the "adverse effect" suffered by an Internet access service must go well beyond "the consumer-specific burden of sorting through an inbox full of spam." Id. at *7. Indeed, "the 'adverse effect' to [an Internet access service] must be both real and of the type uniquely experienced by I[nternet] A[ccess] S[ervice]s for standing to exist." Id. Stagl has alleged only the type of harm typically experienced by most e-mail users, namely that over the course of a couple of years he has received hundreds of spam at his e-mail address kevin@stagl.com. (Doc. 27. ¶ 61.)

Because Stagl has not established his standing as an Internet access service that has suffered an adverse effect, Stagl lacks standing to bring this cause of action and therefore Stagl's Supplemented Motion for Summary Judgment is denied, and Stagl's CAN-SPAM Act

claim, the only one upon which he moved for judgment against Gromicko, is dismissed.

## II.  Motion as to NACHI

On September 9, 2008, the Clerk entered a default against defendant National Association of Certified Home Inspectors. (Doc. 24.) On November 21, 2008, Stagl moved for default judgment. (Doc. 28.)  However, Stagl has not adequately pled his claims. In connection with Count One in the Verified Complaint, Stagl alleges that he is authorized to seek damages and injunctive and other statutory relief pursuant to Fla. Stat. 668.704. (Doc. 2, ¶4).  Yet he has failed to prove that he has standing as any of the four types of persons who may bring a civil action against a person who violates Florida's Electronic Mail Communications Act.  Fla. Stat. 668.704(1)(a)-(d).  One type of person who may bring such a claim is "[a] person engaged in the business of providing Internet access service to the public who is adversely affected by the violation."  Fla. Stat. 668.704(1)(a).  In his Verified Complaint, Stagl does not allege that he is such a person.[4]  Although Stagl does allege in his Motion for Summary Judgment that he is an "Internet Access Service" (Doc. 25, ¶1), he has not, as discussed above, established his standing as an Internet access service that has suffered an adverse effect, let alone one that provides Internet access service to the public, as Florida Statute 668.704(1)(a) requires.  Therefore, Stagl's motion is **MOOT** as to the count based on Florida's Electronic Mail Communications Act.

---

[4]Nor does he allege that he is "[a] financial institution . . . that is adversely affected by the violation," "[a]n owner of a web page, trademark, or service mark who is adversely affected by the violation," or "[t]he Attorney General."  Fla. Stat. 668.704(b)-(d).

6

Stagl's pleading in Count Two and Count Three is also deficient. One of the elements of a claim brought under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) is actual damages. See Rebman, 248 F.R.D. at 631. Because Stagl has not alleged any actual damages in any of his pleadings, Stagl's motion is **MOOT** as to the counts based on FDUTPA.

Finally, the motion is **MOOT** as to the count for gross negligence because Stagl has not stated a viable claim. "The Supreme Court of Florida has defined 'gross negligence' as 'an act or omission that a reasonable, prudent person would know is likely to result in injury to another." Greathouse v. Ceco Concrete Construction, L.L.C., No. 5:06cv2-RS-AK, 2007 WL 624550, at *3 (N.D. Fla. Feb. 23, 2007) (citations omitted). Greathouse lists the elements of gross negligence:

> 1. A composite of circumstances which, together, constitutes an 'imminent' or 'clear and present' danger amounting to more than normal and usual peril;
> 2. A showing of chargeable knowledge or awareness of the imminent danger, and
> 3. The act or omission complained of must occur in a manner which evinces a 'conscious disregard of consequences,' as distinguished from a 'careless' disregard thereof (as in simple negligence) or from the more extreme 'willful or wanton' disregard thereof (as in cuplable or criminal negligence).

*Id.* at *4 (citations omitted). There is nothing in the record here which would support a finding that either NACHI or Gromicko was grossly negligent. In any event, Stagl alleges no actual harm or injury as a result of the conduct he is complaining of. Therefore, the count for gross negligence cannot stand.

Accordingly, it is hereby

**ORDERED:**

Plaintiff's Supplemented Motion for Summary Judgment against Gromicko (Docs. 25 and 27) and Motion for Default Judgment against NACHI (Doc. 28)[5] are **DENIED** and this case is **DISMISSED** with prejudice. The Clerk shall close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of April, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

s./a.

Copies:

pro se parties

---

[5]Alternatively, to whatever extent the default by NACHI is deemed as an admission of liability (notwithstanding the legal insufficiency of Stagl's claims), the record is bereft of any evidence of damages. Despite being told to accompany his motions by affidavits or other evidentiary support (Doc. 23), Stagl has not provided any evidentiary or legal support relating to damages (nor can he, given the facts of this case), making a default judgment meaningless even if it were to be entered.